UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GERARD M.,[1]

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 3:21-cv-13393
Magistrate Judge Norah McCann King

## **OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Gerard M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On November 14, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since March 1, 2018. R. 103, 115, 257–61. Plaintiff's application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

initially and upon reconsideration. R. 116–21, 128–30. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 131–32. Administrative Law Judge Michelle Wolfe ("ALJ") held a hearing on August 19, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 60–91. In a decision dated September 10, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 14, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 37–51. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on May 3, 2021. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 9, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 15.[3] On the same day, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

B.  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 35 years old on his alleged disability onset. R. 49. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. R. 39. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 1, 2018, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, polyarthritis, and obesity were severe impairments. R. 40. The ALJ also found that Plaintiff's diagnosed irregular heartbeat, atrial arrhythmia, Sialadenitis, hypercholesterolemia, history of gout, and hypertension were not severe impairments. R. 40–42.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 42–43.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 43–49. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a delivery driver, car salesman, driver, insurance sales representative, composite position comprised of a motorcycle repairer and detailer, assistant manager and mechanic. R. 48–49.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as a system monitor, an inspector, and an order clerk– existed in the national economy and could be performed by Plaintiff. R. 49–51. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act

from March 1, 2018, Plaintiff's alleged disability onset date, through the date of the decision. R. 51.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 13. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

**IV.    DISCUSSION**

Plaintiff challenges, *inter alia*, the ALJ's finding at step three of the sequential evaluation that Plaintiff's impairments do not meet or medically equal a listed impairment, specifically, Listing 1.04, which addresses disorders of the spine. *Plaintiff's Brief*, ECF No. 10, pp. 17–19; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–3. This Court agrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*,

493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant's impairments meet a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

At the time of the ALJ's decision, Listing 1.04 addressed disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. To meet Listing 1.04A or 1.04C,[4] a claimant must demonstrate the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> Or . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular

---

[4] Plaintiff does not allege that his impairment meets Listing 1.04B. *See generally Plaintiff's Brief*, ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 13.

>pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[5]

*Id*. at § 1.04.

---

[5] Listing 1.00B2b defines the term "inability to ambulate effectively" as follows:

>(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

>(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. at § 1.00B2b. Although not expressly listed as an element of Listing 1.04A, unreported authority in this circuit reflects that an inability to ambulate effectively must be established in order to meet or medically equal Listing 1.04A. *See Anderson v. Comm'r of Soc. Sec*., No. 21-2009, 2022 WL 1635628, at *3 (3d Cir. May 24, 2022) ("Listing 1.04 requires nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis that results in an inability to ambulate effectively.") (citing 20 C.F.R. Part 404, Subpart P, App. 1 Listing 1.04A–C); *Leibig v. Barnhart*, 243 F. App'x 699, 702 (3d Cir. 2007) ("That listing [*i.e.,* Listing 1.04A] requires an inability to ambulate effectively or an inability to perform fine and gross movements effectively."); *Phillips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3820973, at *5 (M.D. Pa. Aug. 16, 2017) (noting that there exists nationwide disagreement on whether the inability to ambulate effectively is a criterion of Listing 1.04A, "the answer to this question is clear in this circuit, where" the Court of Appeals for the Third Circuit has stated that such inability is required) (citing *Leibig*, 243 F. App'x at 702), *report and recommendation adopted sub nom. Philips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017). The Court also notes that Plaintiff does not dispute that he must establish an inability to ambulate effectively in order to meet or medically equal Listing 1.04A. *See Plaintiff's Reply Brief*, ECF No. 13, p. 2.

In the case presently before the Court, at step two, the ALJ determined that Plaintiff suffered the severe impairments of degenerative disc disease of the lumbar spine, polyarthritis, and obesity. R. 40. The ALJ determined at step three that those impairments, whether considered singly or in combination, did not meet or medically equal Listing 1.04A, reasoning as follows:

> The claimant's representative does specifically argue that the claimant's spinal impairment meets or equals Listing 1.04A. To support this argument, the claimant notes that the records since the alleged onset date show the claimant did have positive straight leg raises observed and did report lower back pain with numbness and multiple falls in the fall 2018 and an abnormal EMG/nerve conduction study from June 25, 2020 (Exhibit 7Fp3, 6, 7 and 45Fp14). As a primary matter, the undersigned notes that the claimant's representative argues that the claimant equals Listing 1.04A, she does not show where an acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal any listed impairment. Moreover, while the claimant's records do show positive straight raises as required by the listings, his lumbar MRI from October 2018 shows no compressive [sic] of the cord as required by Listing 1.04A.

R. 42.

Plaintiff challenges this evaluation, arguing that the MRI of his lumbar spine performed on April 7, 2020, reveals, *inter alia*, "moderate spinal canal stenosis with mild bilateral neural foraminal narrowing[,]" *i.e.,* findings that are sufficient to satisfy Listing 1.04A. *Plaintiff's Brief*, ECF No. 10, p. 18 (quoting R. 1071) (internal quotation marks omitted). Plaintiff also asserts that his condition meets Listing 1.04C. *Id.* at 17.

For her part, the Acting Commissioner argues that Plaintiff failed to prove that he met all the criteria for Listing 1.04A and 1.04C and that the ALJ reasonably found that Plaintiff did not meet this listing. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, pp. 8–11. The Acting Commissioner contends that "nothing from the record suggests that Plaintiff's impairments are of equivalent severity to Listing 1.04's criteria" and noted that the ALJ found no evidence of nerve root compression. *Id*. at 9–10 (citing R. 859, 993, 969, 1042, 1472, for the proposition of full muscle strength; and R. 42, 44, 1071, for the proposition of no nerve root

11

compression; R. 44–45, for the proposition of negative straight-leg raising, normal reflexes, full muscle strength, and tone, and no sensory or motor deficits; R. 98–100, 110–12, for the proposition that the state agency reviewing physicians found that Plaintiff did not meet Listing 1.04). The Acting Commissioner also argues that Plaintiff has not shown an inability to ambulate effectively, a requirement for Listing 1.04A and 1.04C. *Id*. at 8–10 (citations omitted).

In reply, Plaintiff insists that the April 7, 2020, MRI of his lumbar spine reveals evidence of nerve root compression. *Plaintiff's Reply*, ECF No. 13, p. 1. Plaintiff also points to record evidence establishing motor loss/muscle weakness to support his argument that he meets the Listing 1.04A criteria. *Id*. at 1–2. Plaintiff goes on to argue that the evidence establishes that he was unable to ambulate effectively. *Id*. at 2 (case citations and citations to the record omitted).

Plaintiff's arguments are well taken. The ALJ relied on Plaintiff's October 2018 MRI of his lumbar spine to find that there was no evidence of "compressive [sic] of the cord as required by Listing 1.04A." R. 42. However, this MRI revealed "[r]adiculopathy, lumbar region. Chronic low back and left leg radicular symptoms[.]" R. 909; *see also* R. 607 ("You have been diagnosed with lumbosacral radiculopathy. This means you have a pinched nerve or nerves in your low back (lumbosacral area)."), 649 (diagnosis of lumbar radiculopathy), 652 (same), 659 (same), 662 (same). Moreover, as Plaintiff points out, the April 2020 MRI of the lumbar spine revealed "moderate spinal canal stenosis with mild bilateral neural foraminal narrowing." R 1071; *see also* R. 44 (noting physical examinations in September 2018 revealed, *inter alia*, positive straight leg raises and weakness in the lower extremities), 47 (conceding that "records further showed that the claimant at times had antalgic gait, positive straight leg raise and lower extremity weakness" and records from October 2018 showed "there was physical findings where the claimant had weakness of his legs and he did have positive straight leg raise with reproduction of

back pain"). Notably, the ALJ did not explain how this evidence establishes that Plaintiff's spinal impairment did not involve nerve root compression, or why this evidence supports the ALJ's conclusion that Plaintiff's spinal impairment does not meet Listing 1.04A or 1.04C, particularly when the ALJ conceded at step three that Plaintiff's "records do show positive straight raises as required by the listings." R. 42; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04; *Danielle J. v. Comm'r of Soc. Sec.*, No. CV 20-12515, 2023 WL 1109577, at *5 (D.N.J. Jan. 30, 2023) (remanding action where, *inter alia*, "[t]he ALJ concluded that there was no 'evidence of nerve root compression,' when Plaintiff's medical records demonstrate oftentimes significant spinal stenosis" in finding that the claimant did not meet Listing 1.04A); *Schneider v. Saul*, No. CV 3:18-0193, 2020 WL 774036, at *4 (M.D. Pa. Feb. 18, 2020) (noting that the "[m]edical records document the presence of: compromise of the nerve root or spinal cord (i.e., severe stenosis)" and concluding that "the ALJ failed to provide a sufficient discussion of the evidence regarding her finding with respect to Listing 1.04A" in concluding that the claimant did not meet or medically equal that listing) (internal quotation marks omitted); *Karstein v. Comm'r of Soc. Sec.*, No. CV 17-04502, 2018 WL 5669172, at *7 (D.N.J. Oct. 31, 2018) ("First, Defendant argues that Plaintiff cannot meet the requirements of listing 1.04(A) because Plaintiff does not point to findings of "nerve root compression." But if credited, Plaintiff's radiculopathy may support that finding.") (citations omitted); *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456–57 (D.N.J. 2016) ("As for nerve root compression, the Plaintiff notes that she has been repeatedly diagnosed with radiculopathy, which is evidence of nerve root compression.") (collecting cases).

In addition, although the Acting Commissioner insists that record evidence establishes that Plaintiff has not shown an inability to ambulate effectively as required by Listing 1.04A and 1.04C, it is significant the ALJ never discussed that criterion when concluding that Plaintiff did

13

not meet Listing 1.04A. R. 42. The Acting Commissioner also points to the ALJ's discussion of the evidence at step four to support her position; however, the Court is not persuaded that such evidence necessarily establishes that Plaintiff can ambulate effectively. For example, although the ALJ did discuss evidence of negative straight-leg raising, normal reflexes, full muscle strength and tone, and no sensory or motor deficits, he also noted Plaintiff's antalgic gait, positive straight leg raising, lower extremity weakness, and limited range of motion of his lower extremities. R. 44–46. Moreover, the ALJ also noted that Plaintiff sought emergency treatment for back pain in April 2020, and that Plaintiff was subsequently released with a rolling walker, wheelchair, and bedside commode. R. 45–46 (noting further that Plaintiff's "discharge goal from home health noted that he would be able to go from sitting to standing without assistance, and independent for walking with no assistance for 10 feet on uneven surfaces (Exhibit 44Fp187-188)"). The ALJ also noted that "follow up treatment post rehab continued to show antalgic gait, and the EMG was abnormal." R. 47. The Acting Commissioner contends that Plaintiff's discharge from the emergency department with a walker was "temporary" because "Plaintiff testified that he used a cane, but if needed, he had a walker, two canes, and a wheelchair[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 10 n.2 (citing R. 70, 80, 1068, 1077). However, the ALJ should construe this evidence and explain in the first instance why it does or does not establish an inability to ambulate effectively pursuant to § 1.00B2b sufficient to satisfy Listing 1.04A and 1.04C. *See Karstein*, 2018 WL 5669172, at *7 ("Whether or not this evidence and any other record evidence ultimately suffices, the ALJ must explain the step three reasoning."); *cf. David G. v. Comm'r of Soc. Sec.*, No. 1:22-CV-01706, 2022 WL 17093066, at *5–6 (D.N.J. Nov. 21, 2022) ("However, for the Court to weigh the sparseness of the record as a reason to find any error harmless would be an impermissible usurpation of the

14

ALJ's role as factfinder."); *Bynum v. Colvin*, 198 F. Supp. 3d 434, 438 (E.D. Pa. 2016) ("If the Court were to construe the evidence in the first instance in order to determine whether the error was harmless, the Court would be usurping the role of the ALJ which is to properly state and evaluate the evidence.").

Finally, to the extent that the Acting Commissioner relies on the reviewing state agency consultants' findings that Plaintiff did not meet or medically equal Listing 1.04, *see Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 10, that argument is unavailing. Those state agency opinions were issued in May and August 2019, *i.e.,* several months before Plaintiff presented to the emergency room in April 2020 with back pain and was discharged to home health care with, *inter alia*, a walker and wheelchair. R. 92–115. Notably, the ALJ discounted the state agency opinions as unpersuasive and inconsistent with the record where

> records further showed that the claimant at times had antalgic gait, positive straight leg raise and lower extremity weakness. Although some improvement was noted with treatment, the records obtained at the hearing level show that the claimant was hospitalized for two days due to back pain, and was recommended to follow up with a spinal surgeon (Exhibit 41F). The claimant['s] follow up treatment post rehab continued to show antalgic gait, and the EMG was abnormal.

R. 47.

As previously discussed, an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Based on the present record, absent at least some explanation by the ALJ, it is not clear to the Court if the ALJ properly concluded that Plaintiff does not meet or medically equal Listing 1.04A, or whether Plaintiff has met or medically equals Listing 1.04B. *See M.K. v. Comm'r of Soc. Sec.*, No. CV 20-0934, 2021 WL 1186775, at *5 (D.N.J. Mar. 30, 2021) ("A claimant may be deemed disabled under this Listing [1.04] if she suffers from an impairment of her nerve root or the spinal cord in the cervical area, lumbar area, or both."); *Stowers v. Saul*, No. CV 19-14110, 2020

WL 7586948, at *8-9 (D.N.J. Dec. 22, 2020) (remanding where, *inter alia*, "Plaintiff's medical record contains evidence which suggests that Plaintiff suffered from several, in fact most, of the findings required by Section 1.04A."); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) ("It is not enough for the ALJ to conclude that no medical evidence meets or equals any of the listings, in the absence of any discussion of why the specific evidence provided by the claimant was not equivalent."). Accordingly, this Court cannot meaningfully review the ALJ's finding that Plaintiff does not meet or medically equal Listing 1.04A —or whether Plaintiff has met Listing1.04C—and determine whether substantial evidence supports this decision at step three. This Court will not speculate as to how the ALJ reached his decision but will instead remand the matter for further consideration even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *See Schneider v. Saul*, No. CV 3:18-0193, 2020 WL 774036, at *4 (M.D. Pa. Feb. 18, 2020) (stating that because the plaintiff's medical record as well as his testimony "reveal that some of the elements of Listing 1.04A were present, the ALJ was required to fully explain her finding that plaintiff's spinal impairment did not meet or equal this Listing" and concluding that the "ALJ failed to provide a sufficient discussion of the evidence regarding her finding with respect to Listing 1.04A. Further proceedings are necessary to fully develop the record regarding Listing 1.04A"); *Swanson v. Comm'r of Soc. Sec.*, No. 1:15-CV-08894, 2017 WL 825199, at *7 (D.N.J. Mar. 2, 2017) ("It is for the ALJ to articulate why Plaintiff meets or does not meet the criteria of Listing 1.04(A), and therefore, the matter must be remanded for further consideration so that the ALJ can do so.").

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[6] Moreover, remand is appropriate even if, upon further examination of the record evidence and the requirements of Listing 1.04A and 1.04C, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the requirements for meeting Listing 1.04A and 1.04C in light of the record evidence, the Court does not consider those claims. However, the Court notes that the ALJ's discussion at step four when explaining her RFC determination ends in a fragment sentence. R. 48 ("Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by" with no further discussion).

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  July 14, 2023                             *s/Norah McCann King*
                                                     NORAH McCANN KING
                                       UNITED STATES MAGISTRATE JUDGE